UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

NOBLE MAXWELL, ANGELA MAXWELL, ELISE LONG,

                              Plaintiffs,

            -against-

CITY OF NEW YORK, POLICE OFFICERS "JOHN DOES" 1-10,

                              Defendants.

**COMPLAINT AND JURY DEMAND**

Docket No.

ECF CASE

------------------------------------------------------------------ x

Plaintiffs Noble Maxwell, Angela Maxwell, and Elise Long, by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2.    The claim arises from September 5, 2013 and September 12, 2013 incidents in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, trespass and false arrest.

3.    Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

1

JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.    The amount in controversy exceeds $75,000.00 excluding interest and costs.

VENUE

7.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

PARTIES

8.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.    The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.    At all times here mentioned defendants were acting under color of state law, to

2

wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

11.    Within 90 days of the events giving rise to these claims, plaintiffs filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

12.    On September 5, 2012, plaintiff Noble Maxwell was arrested in a backyard near 181 Chauncey Street in Brooklyn, New York and was remanded on a bench warrant from Queens.

13.    On September 5, 2012, approximately five unnamed defendants, a female in uniform, two plainclothes males and one officer in a white shirt unnamed defendants unlawfully entered Mr. Maxwell's apartment that he shares with his sister Angela Maxwell at 110 Chauncey Street, Apt 1W, in Brooklyn, New York, without a warrant, consent or exigent circumstances.

14.    Defendants stole a painting from the apartment that was critical of the NYPD, along with several electronics.

15.    Ms. Elise Long, a college student from Michigan who was staying with Mr. Maxwell during a short visit, was the only adult in the apartment when defendants stormed in without consent.

16.    Defendants arrested Ms. Long without probable cause and took her to the precinct and Central Booking for approximately 20 hours.  Her eyes were scanned at

3

Central Booking. She was released without seeing a judge.

17.   Ms. Long returned to the apartment the next day and her cell phone and other personal belongings were missing. She went to the precinct the next day and they denied having anything of hers.

18.   On September 5, 2012, Noble Maxwell was taken in to custody, jailed at Riker's Island, and taken to Queens Criminal Court for the warrant to be vacated.

19.   The warrant was vacated.

20.   On September 11, 2012, after the bench warrant was vacated, plaintiff's sister Angela Maxwell bailed him out.

21.   On September 12, 2012 at approximately 5:30 a.m., defendants knocked on plaintiffs' door.

22.   Plaintiff Angela Maxwell asked who was at the door and looked through the peephole.

23.   She saw a white man at the door who asked for "Roderick".

24.   Ms. Maxwell answered that they have the wrong house and that there was no "Roderick" at the apartment.

25.   Defendants forcefully and unlawfully entered and searched the apartment, without a warrant, breaking the door and a window in order to enter.

26.   In addition to plaintiffs Noble Maxwell and Angela Maxwell, there was a couple also present in the apartment with children.

27.   Defendants scanned all the occupants' eyes with an ION scanner inside the apartment without a search warrant.

28.   Angela Maxwell was handcuffed for approximately 20 minutes while

4

defendants searched the apartment and scanned her eyes without her consent or a search warrant.

29.    Defendants arrested Noble Maxwell without probable cause and without a warrant on September 12, 2012.

30.    He was released after being brought in front of the judge after being in custody for about four hours.

31.    At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.    They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

32.    During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

DAMAGES

33.    As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a.    Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b.    Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.    Violation of their New York State Constitutional rights under Article 1,

Section 12 to be free from an unreasonable search and seizure;

d.    Violation of their New York State Constitutional rights under Article 1,

Section 6 to due process;

e.    Physical pain and suffering;

f.    Emotional trauma and suffering, including fear, embarrassment,

humiliation, harassment, emotional distress, frustration, extreme inconvenience,

anxiety;

g.    Loss of liberty; and

h.    Attorney's and court fees.

FIRST CAUSE OF ACTION
42 U.S.C. § 1983
False Arrest and False Imprisonment
(Against Officer Defendants Regarding Elise Long on September 5, 2012 and
Noble Maxwell and Angela Maxwell on September 12, 2012)

34.   The above paragraphs are here incorporated by reference.

35.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiffs.

36.   The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

37.   At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

38.   Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

39.   At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

40.   All of this occurred without any illegal conduct by plaintiffs.

41.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

42.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against Officer Defendants Regarding Elise Long on September 5, 2012 and
Noble Maxwell and Angela Maxwell on September 12, 2012)

43.   The above paragraphs are here incorporated by reference.

44.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiffs.

45.   The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

46.   At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

47.   Throughout   this   period,   plaintiffs   were   unlawfully,   wrongfully,   and

7

unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

48.  At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

49.  All of this occurred without any illegal conduct by plaintiffs.

50.  Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

51.  Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiffs' rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiffs.

52.  The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the Constitution of the State of New York.

53.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against Officer Defendants Regarding Elise Long on September 5, 2012 and
Noble Maxwell and Angela Maxwell on September 12, 2012)

54.  The above paragraphs are here incorporated by reference.

8

55.    Defendants subjected plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

56.    Defendants intended to confine plaintiffs, plaintiffs were conscious of their confinement and did not consent to their confinement.

57.    Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

58.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

FOURTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

59.    The above paragraphs are here incorporated by reference.

60.    Upon approaching, handcuffing plaintiffs, defendants made plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching.

61.    Defendants engaged in and subjected plaintiffs to immediate harmful and/or offensive touching and battered them without their consent.

62.    Defendants used excessive and unnecessary force with plaintiffs.

63.    Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

9

64.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### FIFTH CAUSE OF ACTION
Trespass
(Against All Defendants Regarding September 5, 2012 and September 12, 2012
Unlawful Entries)

65.    All preceding paragraphs are here incorporated by reference.

66.    Defendants voluntarily and intentionally entered upon plaintiff's real property without consent.

67.    Defendants destroyed property belonging to plaintiff during the trespass.

68.    Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under New York State common law, 42 USC §1983 and the New York State Constitution.

69.    As a result of the trespass, plaintiffs were damaged.

### SIXTH CAUSE OF ACTION
Destruction of Property
(Against All Defendants)

70.    All preceding paragraphs are here incorporated by reference.

71.    Defendants voluntarily and intentionally interfered with plaintiff's possession of his personal property, including artwork that was critical of the NYPD and several electronics.

72.    Defendants' interference with plaintiff's personal property caused damage.

### SEVENTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

73.    The above paragraphs are here incorporated by reference.

74. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

75. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v.

---

[1] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

76. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

77. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

78.  The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

79.  The City has been alerted to the potential abuses of ION scanners since they were introduced into the criminal courts by the NYPD without legislation by media coverage, correspondence from City Council people and civil liberties groups.

80.  Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

81.  All of the aforementioned has created a climate where police officers and

detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

82. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

83. Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.  In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B.      Awarding plaintiffs punitive damages in an amount to be determined by a

jury;

C.      Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of

this action; and

D.      Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiffs demand a trial by jury.


DATED:        November 20, 2013
              Brooklyn, New York

                                        Respectfully yours,

TO:

        City of New York               By: Cynthia Conti-Cook
        100 Church Street              Bar# CC0778
        New York, NY  10007            Stoll, Glickman & Bellina, LLP
                                       Attorneys for Plaintiff
                                       475 Atlantic Avenue, 3rd Floor
                                       Brooklyn, NY  11217
                                       (718) 852-3710
                                       (718) 852-3586
                                       cconti-cook@stollglickman.com

15